LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ISMAEL JUAREZ, GUSTAVO VELAZQUEZ
      a/k/a "JONATHAN" and
RICARDO ALBERTO,
*on behalf of themselves, FLSA Collective*
*Plaintiffs and the Class*,

Plaintiffs,

    v.

BEANOCCHIO OF YORK, INC.
      d/b/a BEANOCCHIO'S,
THE GREEN BEAN CAFE, CORP.
      d/b/a THE GREEN BEAN CAFE,
DARRELL MORRIS and
AYMAN NAMMOURA a/k/a "IMAN",

Defendants.

Case No.:

**CLASS AND**
**COLLECTIVE ACTION**
**COMPLAINT**

**Jury Trial Demanded**

---

      Plaintiffs, ISMAEL JUAREZ, GUSTAVO VELAZQUEZ a/k/a "JONATHAN" and

RICARDO ALBERTO ("Plaintiffs"), on behalf of themselves and others similarly situated, by

and through their undersigned attorney, hereby file this Class and Collective Action Complaint

against Defendants, BEANOCCHIO OF YORK, INC. d/b/a BEANOCCHIO'S, THE GREEN

BEAN CAFE, CORP. d/b/a THE GREEN BEAN CAFE ("Corporate Defendants"), DARRELL

1

MORRIS and AYMAN NAMMOURA a/k/a "IMAN", ("Individual Defendants," and together with Corporate Defendants, "Defendants") and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime compensation, (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime compensation, (3) unpaid spread of hours compensation, (4) statutory penalties, (5) liquidated damages and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiffs:

    (a)    ISMAEL JUAREZ is a resident of New York County, New York.

    (b)    GUSTAVO VELASQUEZ is a resident of New York County, New York.

    (c)    RICARDO ALBERTO is a resident of New York County, New York.

6.      Defendants operate two restaurants under the trade names "BEANOCCHIO'S" and "THE GREEN BEAN CAFE" with locations as follows:

(a)  1431 York Ave. New York, NY, 10021 (BEANOCCHIO'S);

(b)  1413 York Ave, New York, NY 10021 (THE GREEN BEAN CAFE)

(collectively, "Bean Restaurants").

7.     Bean Restaurants operate as a single integrated enterprise. Specifically, Bean Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

(a)  Bean Restaurants are commonly owned by Individual Defendants DARRELL MORRIS and AYMAN NAMMOURA a/k/a "IMAN".

(b)  Bean Restaurants are both located on the same city block on York Avenue between 75th Street and 76th Street. Upon information and belief, the distance between Bean Restaurants are approximately 102 ft. (A copy of the screenshot of the Google Map demonstrating Bean Restaurants' location and distance is annexed as Exhibit A.)

(c)  While Bean Restaurants operate under different trade names, they have been publicly held out to the general public, customers and employees as a single integrated enterprise owned and operated by the same individual owners.

(d)  Individual Defendant DARRELL MORRIS' LinkedIn profiles expressively identify that he is both the owner of BEANOCCNIO'S and THE GREEN BEAN CAFE. (A copy of DARRELL MORRIS' LinkedIn Accounts screenshots is annexed as Exhibit B.)

(e)  On or about June 14, 2016, during an interview with the WNYC Radio, DARRELL MORRIS stated that he "*co-owns* THE GREEN BEAN CAFE on York Avenue … [b]ut his co-owner said *their other restaurant* down the street,

BEANOCCHIO'S ....." (emphasis added) (A copy of the news report's screenshot is annexed as Exhibit C.)

(f)     Supplies and employees are interchangeable between Bean Restaurants. In fact, Plaintiffs GUSTAVO VELAZQUEZ a/k/a "JONATHAN" and RICARDO ALBERTO regularly worked at both Bean Restaurants and they were requested to delivery supplies and food to and from both Bean Restaurants.

(g)     Based on Plaintiffs ISMAEL JUAREZ, GUSTAVO VELAZQUEZ a/k/a "JONATHAN" and RICARDO ALBERTO's personal experiences, observations and conversations with other employees, all Defendants' employees needed to work at both locations if either one was short staffed.

(h)     The outlook, font style and size, design and appearance of the Bean Restaurants' websites are identical. (A copy of the Bean Restaurants' websites' screenshot is annexed as Exhibit D.)

(i)     Upon information and belief, Corporate Defendant BEANOCCHIO OF YORK, INC. d/b/a BEANOCCHIO'S was located at Corporate Defendant THE GREEN BEAN CAFE, CORP. d/b/a THE GREEN BEAN CAFE current location, and DARRELL MORRIS has been held out to the general public, customers and employees as the owner of both Bean Restaurants. (A copy of the screenshots of THE GREEN BEAN CAFE's description is annexed as Exhibit E.)

8.     Corporate Defendants:

(a)    BEANOCCHIO OF YORK, INC. d/b/a BEANOCCHIO'S is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 1431 York Ave., New York, NY 10021.

(b)    THE GREEN BEAN CAFE, CORP. d/b/a THE GREEN BEAN CAFE is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 1413 York Ave, New York, NY, 10021. The Corporate Defendants Restaurants operate as a single integrated enterprise.

9.    Individual Defendants:

(a)    DARRELL MORRIS is the owner, operator and Chief Executive Officer of Corporate Defendants. DARRELL MORRIS exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. DARRELL MORRIS exercised the power to (or delegated to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complaint to DARRELL MORRIS directly regarding any of the terms of their employment, and he would have the authority to effect any changes to the quality and terms of employee's employment. DARRELL MORRIS also had the power to fire and hire, control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and Class members. DARRELL MORRIS regularly visited the restaurants and exercised functional control over the business and financial operations of Corporate Defendants.

(b)    AYMAN NAMMOURA a/k/a "IMAN" is the owner, operator and Chief Executive Officer of Corporate Defendants. AYMAN NAMMOURA a/k/a "IMAN" exercised

control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. AYMAN NAMMOURA a/k/a "IMAN" exercised the power to (or delegated to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complaint to AYMAN NAMMOURA a/k/a "IMAN" directly regarding any of the terms of their employment, and he would have the authority to effect any changes to the quality and terms of employee's employment. AYMAN NAMMOURA a/k/a "IMAN" also had the power to fire and hire, control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and Class members. AYMAN NAMMOURA a/k/a "IMAN" regularly visited the restaurants and exercised functional control over the business and financial operations of Corporate Defendants.

10.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

11.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including cooks, line-cooks, counter attendants, food preparers, dishwashers, cashiers, delivery workers, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

12.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all culminating in a willful failure to pay them the proper minimum wage and overtime compensation. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

13.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

14.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including cooks, line-cooks, counter attendants, food preparers, dishwashers, cashiers, and delivery workers, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

15.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number

are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

17.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay minimum wage, (ii) failing to pay overtime compensation, (iii) failing to pay spread of hours (iv) failing to provide proper wage statements per requirements of the New York Labor Law and (v) failing to provide proper wage and hour notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

18.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

19.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions

engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

20.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

21.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)      Whether Defendants employed the Class members within the meaning of the New York Labor Law;

(b)      What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c)      At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

(d)      Whether Defendants properly notified Plaintiffs and Class members of their regular hourly rate and overtime rate;

(e)      Whether Defendants paid the non-exempt class members the federal and state minimum wage for all hours worked;

(f)      Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the federal and New York Labor Law;

(g)      Whether Defendants paid Plaintiff and Class members the spread of hours premium as required by the New York Labor Law;

(h)      Whether Defendants provided proper wage and hour notices to the Class members, at date of hiring and annually, per requirements of the New York Labor Law; and

(i)      Whether Defendants provided proper wage statements to the Class members per requirements of the New York Labor Law.

## **STATEMENT OF FACTS**

**Plaintiff ISMAEL JUAREZ**

22.      In or around September 2008, Plaintiff ISMAEL JUAREZ was hired by Defendants to work as a counter attendant and food preparer at BEANOCCHIO'S. Plaintiff

ISMAEL JUAREZ's employment was unilaterally terminated by Defendants on or about June 2017.

23.    During his employment with Defendants, Plaintiff ISMAEL JUAREZ regularly worked for 6 days per week, he regularly worked from 5:00 am to 4:00 pm for 4 days a week, and 6:00 am to 6:00 pm for 2 days a week.  From September 2008 when he started working for Defendants, he was paid $4 per hour, and his pay rate was raised to $ 5 per hour sometime before January 2013. In or about January 2013, his pay rate was raised from $5 per hour to $7.5 per hour. In or about January 2014, his pay rate was raised from $7.5 per hour to $9 per hour. In or about January 2015, his pay rate was raised from $9 per hour to $10 per hour. Throughout his employment with Defendants, he was paid straight time for all of his hours worked and did not receive any overtime premium.

24.    Throughout his employment with Defendants, Plaintiff ISMAEL JUAREZ regularly spoke with the following co-workers principally based about Defendants illegal pay practices:

| Co-worker's Name | Position(s) | Principal Work Location |
|---|---|---|
| ISMAEL "Last Name Unknown" ["LNU"] | Counter Attendant and Food Preparer | THE GREEN BEAN CAFE |
| ADOLFO [LNU] | Cook | THE GREEN BEAN CAFE |
| MARCOS [LNU] | Cook | THE GREEN BEAN CAFE |
| JAIME a/k/a "JIMMY" [LNU] | Cook | BEANOCCHIO'S |
| NICHOLAS [LNU] | Delivery worker and Porter | BEANOCCHIO'S |
| GUSTAVO VELASQUEZ a/k/a "JONATHAN" | Counter Attendant and Food Preparer | BEANOCCHIO'S |
| RICARDO ALBERTO | Counter Attendant and Food Preparer | BEANOCCHIO'S |
| JOSE [LNU] | Salad Preparer or Cook | BEANOCCHIO'S |
| HORCENSIA [LNU] | Counter Attendant | BEANOCCHIO'S |
| SANDRA [LNU] | Counter Attendant | BEANOCCHIO'S |

25.    Based on Plaintiff ISMAEL JUAREZ's direct observations and conversations with the above-referenced employees, all Plaintiffs, FLSA Collective Plaintiffs and Class members were asked to transfer ingredients, supplies or equipment between Bean Restaurants if either restaurant was short-staffed, and all Plaintiffs, FLSA Collective Plaintiffs and Class members were threatened with termination if they refused to work at a different restaurant location that was short-staffed, and both Bean Restaurants were subject to the same wage and hour policies in violation of relevant FLSA and NYLL provisions.

26.    Throughout his employment with Defendants, Plaintiff ISMAEL JUAREZ talked with his co-workers (including, but not limited to, all individuals listed in paragraph 24) about their wages below the statutory minimum rate and their unpaid overtime compensation and unpaid spread of hours premium.

27.    Specifically, on multiple occasions during lunch breaks exclusively for counter attendants and food preparers of both Bean Restaurants, Plaintiff ISMAEL JUAREZ discussed Defendants' illegal wage practices with ISMAEL [LNU] (counter attendant and food preparer principally working at THE GREEN BEAN CAFE), HORCENSIA [LNU] (counter attendant) and SANDRA [LNU] (counter attendant), Plaintiff GUSTAVO VELASQUEZ a/k/a "JONATHAN", Plaintiff RICARDO ALBERTO and other counter attendants and food preparers. The above referenced co-workers complained that they were being paid illegally, but they were afraid of raising the issue to Defendants.

28.    Plaintiff ISMAEL JUAREZ also frequently spoke with Plaintiff GUSTAVO VELASQUEZ a/k/a "JONATHAN", and sometimes with Plaintiff RICARDO ALBERTO, on their way home because they all needed to take the northbound 6 Train at the 77 Street Station. Based on these personal observations and conversations with co-workers, ISMAEL JUREZ

knew that other non-managerial employees at both Bean Restaurants (including, but not limited to, individuals listed in paragraph 24) were similarly compensated below the statutory minimum rate and did not receive any overtime premium or "spread of hours" premium.

29.     Plaintiff ISMAEL JUAREZ was extremely frustrated by Defendants' illegal wage practices and on more than one occasions he complained about the Defendants' illegal wage practices and confronted Defendants DARRELL MORRIS and AYMAN NAMMOURA a/k/a "IMAN" but to no avail.

**Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN**

30.     From in or around January 2009 until in or around January 2017, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN was employed by Defendants to work as a counter attendant and food preparer at Defendants' restaurant BEANOCCHIO'S. Throughout his employment with Defendants, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN was also regularly required to work at THE GREEN BEAN CAFE as needed.

31.     During his employment with Defendants, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN regularly worked 6 to 7 days a week, for each of his working day, he regularly worked from 7:00 am to 6:00 pm. From approximately January 2009 until approximately January 2013, he was paid a rate ranging from $6 to $7 per hour. From approximately January 2013 until January 2014, he was paid a rate ranging from $7.5 to $8.5 per hour. From approximately January 2014 until approximately April 2016, he was paid a rate ranging from $9 to $9.5 per hour. From approximately April 2016, he was paid $10 per hour. Throughout his employment with Defendants, he was paid straight time for all of his hours worked and did not receive any overtime premium.

32.     Throughout his employment with Defendants, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN regularly spoke with the following co-workers about Defendants illegal pay practices:

| Co-worker's Name | Position(s) | Principal Work Location |
|---|---|---|
| ISMAEL "Last Name Unknown" ["LNU"] | Counter Attendant and Food Preparer | THE GREEN BEAN CAFE |
| ADOLFO [LNU] | Cook | THE GREEN BEAN CAFE |
| MARCOS [LNU] | Cook | THE GREEN BEAN CAFE |
| SHELBY [LNU] | Counter Attendant | THE GREEN BEAN CAFE |
| JAIME a/k/a "JIMMY" [LNU] | Cook | BEANOCCHIO'S |
| ISMAEL JUAREZ | Counter Attendant and Food Preparer | BEANOCCHIO'S |
| RICARDO ALBERTO | Counter Attendant and Food Preparer | BEANOCCHIO'S |
| JOSE [LNU] | Salad Preparer or Cook | BEANOCCHIO'S |
| SANDRA [LNU] | Counter Attendant | BEANOCCHIO'S |

33.     Based on Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN's direct observations and conversations with the above-referenced employees, all Plaintiffs, FLSA Collective Plaintiffs and Class members were asked to transfer ingredients, supplies or equipment between Bean Restaurants if either restaurant was short-staffed, and all Plaintiffs, FLSA Collective Plaintiffs and Class members were threatened with termination if they refused to work at a different restaurant location that was short-staffed, and both Bean Restaurants were subject to the same wage and hour policies in violation of relevant FLSA and NYLL provisions.

34.     Specifically, on multiple occasions during lunch breaks exclusively for counter attendants and food preparers of both Bean Restaurants, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN discussed Defendants' illegal wage practices with SHELBY [LNU] (counter attendant and food preparer principally working at THE GREEN BEAN CAFE), ISMAEL [LNU] (counter attendant and food preparer principally working at THE GREEN BEAN CAFE),

and SANDRA [LNU] (counter attendant), Plaintiff ISMAEL JUAREZ, Plaintiff RICARDO ALBERTO and other counter attendants and food preparers. The above referenced co-workers complained that they were short-changed on compensation, but they were afraid of raising the issue to Defendants.

35.    Besides the discussions regarding Defendants' illegal wage practices among co-workers during lunch breaks, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN also frequently spoke with Plaintiff ISMAEL JUAREZ", and sometimes with Plaintiff RICARDO ALBERTO, on their way home because they all needed to take the northbound 6 Train at the 77 Street Station. They also frequently met with each other for lunch at places like pizzeria and café and they would discuss Defendants' illegal wage practices from time to time. Specifically, on more than one occasion, Plaintiff GUSTAVO VELASQUEZ brought about the wage and salary issue on some Fridays when they received their salaries on those days, they compare their salaries and Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN confirmed the conversation during lunch breaks that Defendants' illegal wage practices applied to all non-managerial employees based on a comparison of their salaries.

36.    As such, based on these personal observations and conversations with co-workers, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN knew that other non-managerial employees at both Bean Restaurants (including, but not limited to, individuals listed in paragraph 32) were similarly compensated below the statutory minimum rate and did not receive any overtime premium or "spread of hours" premium.

**Plaintiff RICARDO ALBERTO**

37.    From approximately January 2013 until approximately January 23, 2017, Plaintiff RICARDO ALBERTO was employed by Defendants to work as a counter man and food

preparer at Defendants' restaurant BEANOCCHIO'S. Throughout his employment with Defendants, Plaintiff RICARDO ALBERTO was also regularly required to work at THE GREEN BEAN CAFE as needed.

38.    During his employment with Defendants, Plaintiff RICARDO ALBERTO's regularly worked for 6 days a week, from 5:00 a.m. to 4:00 p.m. From approximately January 2013 until approximately April 2016, he was paid $9 per hour. From approximately April 2016 until he was unilaterally terminated by Defendants on approximately January 23, 2017, he was paid $10 per hour. Throughout his employment with Defendants, Plaintiff RICARDO ALBERTO was paid straight time for all of his hours worked and did not receive any overtime premium.

39.    Throughout his employment with Defendants, Plaintiff RICARDO ALBERTO regularly spoke with the following co-workers about Defendants illegal pay practices:

| Co-worker's Name | Position(s) | Principal Work Location |
|---|---|---|
| ISMAEL "Last Name Unknown" ["LNU"] | Counter Attendant and Food Preparer | THE GREEN BEAN CAFE |
| BRIAN [LNU] | Counter Attendant and Food Preparer | THE GREEN BEAN CAFE |
| ADOLFO [LNU] | Cook | THE GREEN BEAN CAFE |
| AUSENCIA [LNU] | Counter Attendant | BEANOCCHIO'S |
| JAIME a/k/a "JIMMY" [LNU] | Cook | BEANOCCHIO'S |
| ISMAEL JUAREZ | Counter Attendant and Food Preparer | BEANOCCHIO'S |
| GUSTAVO VELASQUEZ a/k/a JONATHAN | Counter Attendant and Food Preparer | BEANOCCHIO'S |
| JOSE [LNU] | Salad Preparer or Cook | BEANOCCHIO'S |
| SANDRA [LNU] | Counter Attendant | BEANOCCHIO'S |
| NICHOLAS [LNU] | Porter and Dish Washer | BEANOCCHIO'S |

40.    Based on Plaintiff RICARDO ALBERTO's direct observations and conversations with the above-referenced employees, all Plaintiffs, FLSA Collective Plaintiffs and Class

members were asked to transfer ingredients, supplies or equipment between Bean Restaurants if either restaurant was short-staffed, and all Plaintiffs, FLSA Collective Plaintiffs and Class members were threatened with termination if they refused to work at a different restaurant location that was short-staffed, and both Bean Restaurants were subject to the same wage and hour policies in violation of relevant FLSA and NYLL provisions.

41.    Specifically, on multiple occasions during lunch breaks exclusively for counter attendants and food preparers of both Bean Restaurants, Plaintiff RICARDO ALBERTO discussed Defendants' illegal wage practices with BRIAN [LNU] (counter attendant and food preparer principally working at THE GREEN BEAN CAFE), ISMAEL [LNU] (counter attendant and food preparer principally working at THE GREEN BEAN CAFE), AUSENCIA [LNU], SANDRA [LNU] (counter attendant), Plaintiff ISMAEL JUAREZ, Plaintiff GUSTAVO VELASQUEZ a/k/a JONATHAN and other counter attendants and food preparers. The above referenced co-workers complained that they were shorted on compensation, but they were afraid of raising the issue to Defendants.

42.    As such, based on these personal observations and conversations with co-workers, Plaintiff RICARDO ALBERTO knew that other non-managerial employees at both Bean Restaurants (including, but not limited to, individuals listed in paragraph 39) were similarly compensated below the statutory minimum rate and did not receive any overtime premium or "spread of hours" premium.

43.    At all relevant times, Defendants paid Plaintiffs, FLSA Collective Plaintiffs and Class members at hourly rates below the prevailing minimum wage in violation of the FLSA and NYLL.

44.    At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime compensation in violation of both the FLSA and the NYLL.

45.    At all relevant times, the work hours of Plaintiffs and Class members regularly exceeded ten (10) hours per day, but Defendants failed to pay them the proper spread of hours premium in violation of the NYLL.

46.    At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with proper wage and hour notices or wage statements as required by NYLL.

47.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked in excess of forty (40) hours per week.

48.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs the federal and state minimum wage for all hours worked.

49.    Defendants knowingly and willfully operated their business with a policy of not paying the spread-of-hours premium to Plaintiffs and Class members, in violation of the NYLL.

50.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class members, in violation of the NYLL.

51.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiffs and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

52.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

53.     Plaintiffs reallege and reaver Paragraphs 1 through 52 of this class and collective action Complaint as if fully set forth herein.

54.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

55.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

57.     At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage and unpaid overtime compensation to Plaintiffs and FLSA Collective Plaintiffs for their hours worked.

58.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

59.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

60.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime compensation plus an equal amount as liquidated damages.

61.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

63.     Plaintiffs reallege and reaver Paragraphs 1 through 62 of this class and collective action Complaint as if fully set forth herein.

64.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

65.     Defendants knowingly and willfully violated Plaintiffs' and non-exempt class members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

66.     Defendants knowingly and willfully violated Plaintiffs' and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

67.     Defendants willfully violated Plaintiffs rights by failing to pay "spread of hours" premium to Plaintiffs for each workday that exceeded ten (10) or more hours.

68.     Defendants knowingly and willfully failed to provide proper wage and hour notices, at the date of hiring and annually thereafter, to Plaintiffs and Class members, as required by New York Labor Law § 195(1).

69.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class members with every wage payment, as required by New York Lab. Law § 195(3).

70.     Due to Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid spread-of-hours premium, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

d.  An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

e.  An award of unpaid spread-of-hours due under the New York Labor Law;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage pursuant to the FLSA;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage, overtime compensation and spread-of-hours premium pursuant to the New York Labor Law;

h.  An award of statutory penalties as a result of Defendants' failure to comply with the New York Labor Law wage and hour notice and wage statement requirements;

i.  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiffs as Representative of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:    July 5, 2017                    Respectfully submitted,

                                          LEE LITIGATION GROUP, PLLC
                                          C.K. Lee (CL 4086)
                                          Anne Seelig (AS 3976)
                                          30 East 39th Street, Second Floor
                                          New York, NY 10016
                                          Tel.: 212-465-1188
                                          Fax: 212-465-1181
                                          *Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*


                              By:    _____*/s/ C.K. Lee*_____
                                          C.K. Lee, Esq. (CL 4086)

23